**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

YE OLDE TIME KEEPERS, INC.,

                      Plaintiff,

      v.

C.R. MARTIN AUCTIONEERS, INC. D/B/A
CLARS AUCTION GALLERY,

                    Defendant.

Case No. 17-CV-4377(ADS)(ARL)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE,**
**TO TRANSFER**

David C. Lee, CA Bar No. 193743
(Pro Hac Vice pending)
Jill N. Jaffe, CA Bar No. 286625
(Pro Hac Vice pending)
Nossaman LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  415.398.3600
Facsimile:   415.398.2438

Defendant C.R. MARTIN AUCTIONEERS, INC. d/b/a CLARS AUCTION GALLERY ("Defendant" or "CLARS") moves to dismiss Plaintiff YE OLDE TIME KEEPERS, INC.'s ("Plaintiff" or "Ye Olde") First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue in the Eastern District of New York.  Alternatively, CLARS seeks a transfer of the matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

Simply put, this case does not belong in this Court.  Plaintiff, a New York resident, participated (via telephone) in a California auction, conducted by a California corporation, and successfully bid on two rare Chinese clocks located in California and consigned by a California consignor.  Ye Olde transmitted payment for the clocks to Defendant in California, and subsequently traveled to California to physically inspect the clocks and oversee their crating and shipment to China (not New York).  Ye Olde now disputes the provenance of those clocks, and improperly brings suit in New York.  Not only did the conduct giving rise to this dispute occur in California, but Plaintiff asserts violations of a California statute.

To begin with, the Court lacks personal jurisdiction over CLARS.  Under the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), CLARS is not subject to general jurisdiction here because—as a California corporation headquartered in California—it is not "at home" in New York.  CLARS does not have, and never has had, systematic or continuous contacts with New York.  Nor is CLARS subject to specific jurisdiction:  as recent Supreme Court precedent makes clear, specific jurisdiction requires that the *defendant* create suit-related contacts with, and that it have a *specific connection* to, the forum state.  Ye Olde fails to identify any such contacts between CLARS and New York bearing on its claim, and therefore fails to

1

make a *prima facie* showing that this Court can exercise personal jurisdiction over CLARS, or that venue is proper here.  Dismissal is therefore warranted under Rules 12(b)(2) and 12(b)(3).

Alternatively, if the Court does not dismiss this case, it should be transferred to the Northern District of California for the reasons set forth below.

## II.    STATEMENT OF FACTS

### A.    CLARS Is A California Corporation With A West Coast Focus.

CLARS is a California corporation whose principal place of business is located in Oakland, California.  FAC, ECF 8, ¶ 10; Declaration of Redge Martin ("Martin Decl."), ¶4.  All of CLARS' management team, executives, and employees work in or out of its Oakland office; CLARS does not have any other offices or locations.  *Id.*  Its sole business purpose is to conduct monthly public auctions of thousands of items consigned to it by third party owners.  *Id.*, ¶10. CLARS has focused its business development efforts on California and West Coast residents and businesses.  *Id.*, ¶5.  Accordingly, CLARS is generally recognized as the largest auction house on the West Coast, and has auctioned numerous high-valued goods to buyers around the world wishing to participate in its public auctions.  *Id.*, ¶5, 11.

At all times relevant to this litigation, CLARS has never adopted a business strategy aimed at increasing its business relationship with New York citizens or New York companies. *Id.*, ¶6.  CLARS does not have a physical presence in New York and is not a registered business entity in New York.  *Id.*  CLARS does not maintain any bank accounts in New York, does not have a phone listing in New York, does not own personal or real property in New York, and does not conduct public relations work or promote its interests through agents located in New York. *Id.*  CLARS does not engage in significant solicitations of business in New York nor does it

2

solicit business, at all, from a permanent location in New York. *Id*., ¶7. Finally, CLARS does not have a marketing budget specifically for New York. *Id*.

The lack of a business strategy to target New York is reflected in CLARS' revenues. Very little of CLARS' revenue is generated from New York. *Id*., ¶9. For the years 2013-2017, only 4.12% of its revenue was generated from New York buyers. *Id*.

**B.      CLARS' Interactions With Ye Olde All Occurred In California.**

On May 22, 2016, CLARS held a monthly public auction which included Lot 6526 consisting of a "[r]are pair of Chinese ormolu Automaton clocks, Guangzhou Workshop" (the "Clocks"). *Id*., ¶13. On May 20, 2016 (just prior to the auction), Ye Olde (through Jason Nichinson) initiated contact with CLARS requesting to participate in the May 22, 2016 auction by telephone. *Id*., ¶14, Exh. B. That request establishes that Plaintiff learned about CLARS' auctioning of the Clocks from a colleague – not from CLARS' website or circulated catalogs. *Id*.

That same day, CLARS acknowledged Mr. Nichinson's registration in the auction via email, and stated that, "[a]s a reminder, all submitted absentee and telephone bids are subject to [CLARS'] Conditions of Sale." *Id*., ¶15, Exh. C. Mr. Nichinson responded "Yes, that is perfect" on May 21, 2016. *Id.* Ye Olde was ultimately the successful bidder for the Clocks. *Id.*

The Conditions of Sale in effect for the May 22, 2016 auction constitute a California contract—it was generated in and distributed from California, performed in California, and payment made under the contract was sent to California. *Id*., ¶¶12, 16-19, Exh. A. In fact, following Ye Olde's successful bid on the Clocks, Mr. Nichinson traveled to Oakland, California to inspect and personally oversee the packaging of the Clocks for shipment to China. *Id*., ¶19.

Prior to and following the May 22 auction, Mr. Nichinson emailed CLARS on several occasions to ask specific questions about the Clocks. *Id*., ¶16. CLARS responded to these

3

requests; however, CLARS made no representations to Ye Olde from a New York location; nor did any of its employees or representatives travel to New York for any purpose related to the auction or to Ye Olde's purchase of the Clocks. *Id*. All of CLARS' interactions with Ye Olde emanated from California. Ultimately, Mr. Nichinson, weeks after shipping the Clocks into China, contacted CLARS claiming – without evidence – that they were not genuine. *Id*., ¶20.

**C.     The Vast Majority Of The Witnesses Are Located In California.**

Other than Mr. Nichinson (who apparently resides in New York), virtually every other witness with personal knowledge of CLARS' May 22, 2016 auction, the Clocks, and Ye Olde's purchase and shipment of those items resides in California, including but not limited to the following CLARS employees: Redge Martin, President; Deric Torres, VP, Director of Furniture & Decorative Arts Department; Anya Grzeskowiak, Photographer; John McKelvy, Graphic Designer; Sue Bischofberger, Director of Online Services; Jennifer Wilson, Fine Arts Specialist; Daniel Spina, Front Office Administrator; and Karen Wolfe, VP of Operations; Julie Bai, Controller. The Consignor for the Clocks also resides in California. *Id*., ¶21.

**III.    THIS CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

A plaintiff bears the burden of establishing that jurisdiction is proper. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). At the pleadings stage, a plaintiff is required to make a prima facie showing of jurisdiction. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998); *DiBella v. Hopkins*, 187 F. Supp. 2d 192, 198 (S.D.N.Y. 2002). "[A] prima facie showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y.1997).

To determine whether personal jurisdiction is proper, a federal court must assess whether: (1) the plaintiff has established personal jurisdiction under the state's long arm statute; and (2) whether personal jurisdiction "comports with the limits imposed by federal due process" either based on a theory of general or specific jurisdiction. *Daimler*, 134 S. Ct. at 753-58. Personal jurisdiction exists only if the plaintiff can satisfy both factors.

Here, the Court lacks personal jurisdiction under both New York's general and specific jurisdiction long-arm statutes. And, personal jurisdiction is not proper under the Due Process Clause of the U.S. Constitution. Accordingly, this Court lacks jurisdiction over Defendant.

### A.      This Court Does Not Have General Jurisdiction Over CLARS.

Defendant is not subject to general jurisdiction in New York. General jurisdiction may be asserted over corporations "doing business" in New York under CPLR § 301, which states in pertinent part, "[a] court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore." New York's general jurisdiction statute applies only to corporate defendants who are present in New York with a measure of permanence and continuity; a defendant who engages in occasional or casual business in New York or merely solicits New York customers does not meet this standard. *Brown v. Web.com Group, Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014). "This inquiry is a 'simple and pragmatic' test, and courts focus on a 'traditional set of indicia,' including the (1) existence of a company office in the state, (2) the presence of bank accounts or property in the state, (3) the maintaining of a phone listing in the state, (4) any public relations work done in the state, and (5) attempts by the company to promote its interests through agents or other individuals permanently located in the state." *Schultz v. Ocean Classroom Found., Inc.*, No. 01 Civ. 7487(DAB), 2004 WL 488322, at *4 (S.D.N.Y. Mar. 15, 2004) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir.

5

2000) (citations omitted), cert. denied, 532 U.S. 941 (2001)).

Courts may also assert jurisdiction pursuant to CPLR § 301 under the "solicitation plus" doctrine, which confers jurisdiction over "entities that 'regularly solicit[] business [in New York] and engage . . . in some additional commercial activity within the state.'" *Schultz*, 2004 WL 488322 at *4 (quoting *Thomas Publishing Co. v. Industrial Quick Search, Inc.*, 237 F. Supp. 2d 489, 491 (S.D.N.Y. 2002)). This doctrine only applies where the solicitation is substantial and done from a "permanent location within the state." *Schultz*, 2004 WL 488322 at *4.

Here, CLARS, a California company, does not have an office in New York, does not maintain bank accounts in New York, does not own personal or real property located in New York, does not have a phone listing in New York, and does not conduct public relations work or promote its interests through agents located in New York. Martin Decl., ¶6. Moreover, CLARS does not engage in "significant" solicitations of business nor does it solicit business, at all, from a permanent location in New York. *Id.*, ¶7. The only discernible connection that CLARS has to New York is that its internet website is accessible to anyone with a computer; including New York residents. Thus, New York does not have general jurisdiction over CLARS under CPLR § 301. *See Brown*, 57 F. Supp. 3d at 354-55 (declining to find general jurisdiction where connections to New York were solely via the internet even though 7.5% of the defendant's domestic customers resided in New York).

Additionally, the Supreme Court's decision in *Daimler* sharply limits the jurisdictions in which a corporate defendant may be considered "essentially at home" and thus subject to general jurisdiction. *Daimler*, 134 S. Ct. at 755-58, 760 (holding that "[t]he two places where a corporation is 'essentially at home' and therefore subject to general jurisdiction are its place of incorporation and its principal place of business."). A corporation can be considered at home

6

elsewhere only in a truly "exceptional case," such as when its de facto principal place of business and its formal headquarters are temporarily in different locations. *Id*. at 755-58 & n.8 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 447-48 (1952)).

*Daimler* conclusively demonstrates that CLARS is not subject to general jurisdiction in New York. As Plaintiff acknowledges, CLARS is incorporated in California and its principal place of business is in California. FAC, ¶10; *see also* Martin Decl., ¶4. And there are no "exceptional" circumstances here that would warrant considering CLARS "at home" elsewhere. Therefore, as guided by *Daimler*, CLARS is not subject to general jurisdiction in New York.

**B.      This Court Does Not Have Specific Jurisdiction Over CLARS.**

**1.      This Court Lacks Specific Jurisdiction Pursuant to New York's Statute Governing Business Transactions, CPLR § 302(a)(1).**

This Court also does not have specific jurisdiction over Defendant. To exercise personal jurisdiction over an out-of-state defendant under CPLR § 302(a)(1), a plaintiff must establish two elements: (1) the defendant "must 'transact business' within the state"; and (2) "the claim against the nondomiciliary must arise out of that business activity." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Put another way, there must be a nexus between the business transactions and the cause of the litigation. *Id*.

"A nondomiciliary 'transacts business' under CPLR § 302(a)(1) when he '***purposefully avails***' [himself] of the privilege of conducting activities within [the forum state], thus invoking the benefits and protections of its laws.'" *Id*. (citations omitted) (emphasis added). To determine whether a defendant transacted business in the forum state for the purposes of § 302(a)(1), courts consider:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a

7

> contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects [it] to supervision by [a] corporation in the forum state.

*Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).  A court must look to the totality of the defendant's contacts with the forum state to determine whether jurisdiction is proper.  *CutCo Indus.*, 806 F.2d at 365.

Judge Spatt's own recent decision in *Skrodzki v. Marcello*, 810 F. Supp. 2d 501 (E.D.N.Y. 2011), is instructive because *Skrodzki* concerned facts very similar to those at issue here and the decision includes a thoughtful and thorough analysis as to why those facts failed to establish personal jurisdiction under New York's long arm statutes.  There, the plaintiff, a New York resident, decided to purchase a crane from the defendants, a Mississippi corporation and its president.  *Id*. at 505.  The plaintiff learned about the defendants' crane from a website, and submitted inquiries to the defendants via email.  *Id*.  After further negotiations (via email and telephone), the plaintiff purchased the crane and wired payment to the defendants in Mississippi.  *Id*. at 506.  Subsequent problems with the shipment led plaintiff to file an action in New York for breach of contract, deceit, and promissory estoppel.  *Id*.  Defendants then moved to dismiss.

After finding that the court lacked general jurisdiction, Judge Spatt analyzed whether the alleged facts were sufficient to establish specific jurisdiction under CPLR § 302(a)(1) based on the *Sunward Electric* factors (set forth above).  Judge Spatt first reasoned that the contract at issue was a "one-time agreement for the sale and delivery" of the crane and did not require an on-going relationship.  *Id*. at 509.  The Court found that other factors also weighed against asserting jurisdiction:  the defendants never visited New York in connection with the contract;

8

rather, the plaintiff visited Mississippi to view the crane, and no payment was sent to New York under the contract. *Id*. at 510. Importantly, the Court found that the email and phone negotiations were insufficient to show that the defendants "actively projected" themselves into New York, and that the plaintiff (as here) had initiated contact. *Id*. at 511. Further, the Court declined to hold that the defendants transacted business pursuant to their website. *Id*. at 514-19. The defendants' website only provided minimal interaction—contact information via a link— and, furthermore, the parties negotiated the contract at issue by email or phone. *Id*. Accordingly, the Court held that there was no jurisdiction under CPLR § 302(a)(1).

Other decisions from district courts in New York have reached the same conclusion based on similar facts. *See, e.g., Pro-Fac Cooperative, Inc. v. Alpha Nursery, Inc.*, 205 F. Supp. 2d 90 (W.D.N.Y. 2002) (holding that an Oregon agricultural cooperative was not subject to personal jurisdiction in New York notwithstanding its contract to supply goods in New York); *Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.*, 125 F. Supp. 2d 641, 650-52 (E.D.N.Y. 2000) (holding that the court lacked jurisdiction despite existence of multiple agreements to perform work for benefit of New York corporation and sending of prototype to corporation in New York; agreements were executed in California and were governed by California law; firm received payment for its work in California; work was performed in California; and no representative of firm visited corporation's New York offices).

The facts deemed decisive in *Skrodzki* are virtually identical to those at issue here. The disputed transaction between CLARS and Plaintiff concerns a "one-time agreement for the sale and delivery" of two rare Chinese clocks that requires no on-going relationship. Martin Decl., ¶¶13-20. CLARS never visited New York in connection with that transaction. *Id*., ¶16. Instead (as in *Skrodzki*), ***Plaintiff*** traveled to California to inspect the Clocks after purchase, and to

9

oversee their packing and shipment to China. *Id.*, ¶19. Plaintiff likewise transmitted payment for the Clocks to Defendant in California; no payment or other transactional activities occurred in New York. *Id.*, ¶18. Moreover, while Plaintiff and Defendant exchanged various emails concerning the transaction, such communications (consistent with *Skrodzki*) were incidental and do not subject CLARS to jurisdiction in New York as they do not at all establish that CLARS "actively projected" itself into New York; indeed, many such communications address: (1) requests that CLARS take photographs of the Clocks in California; (2) Mr. Nichinson's requests to extend the rescission period set forth in the Conditions of Sale; (3) CLARS making repeated demands to Plaintiff for payment; and (4) Mr. Nichinson's travel to California to inspect the Clocks in California and to oversee their crating and shipment from California to China. *Id.*, ¶¶16-19. As the Second Circuit affirmed in *CutCo Industries v. Naughton*, 806 F.2d 361, 367 (2d Cir. 1986), "attempts to adjust a dispute as to performance of a contract or to discuss differences under an existing contract have no jurisdiction[al] consequences." *Id.* (quotation marks omitted). Here, as in *Skrodzki*, Ye Olde's purchase of the Clocks was a one-time contractual relationship, a fact against a finding of jurisdiction in New York.

Moreover, here, again as in *Skrodzki*, **Plaintiff** initiated contact for purposes of participating in CLARS' California-based auction. Plaintiff contacted CLARS via email to participate as a telephonic bidder in that event. Martin Decl., ¶14. After successfully outbidding other bidders for the Clocks, Plaintiff thereafter initiated numerous email communications with CLARS to modify the Conditions of Sale (specifically, to lengthen its inspection and due diligence period), thereby engaging in negotiations related to the Clocks. *Id.*, ¶17. In other words, Ye Olde instigated its own participation in the California auction and engaged in written email communications to modify CLARS' Conditions of Sale.

And, finally, other than asserting that CLARS' website provided online bidding registration, Ye Olde does not allege that CLARS performed *any* services through its website. *See, generally*, FAC.  This lone fact, which is not clearly evident from the face of the Complaint, is insufficient to establish personal jurisdiction, especially because Ye Olde did not actually use CLARS' website to register as a bidder.  *Id*., ¶14.  Consequently, Ye Olde has failed to allege any facts establishing that CLARS "purposefully availed" itself to the privilege of conducting business in New York by using its website to "target" New York consumers.  *See Skrodzki*, 810 F. Supp. 2d at 516.  New York law is clear that mere availability of a website "to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)."  *Royalty Network Inc. v. Dishant.com, LLC,* 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009). As this Court has acknowledged, even in the case of interactive websites, that fact alone cannot confer jurisdiction under CPLR § 302(a)(1) because, otherwise, any company in the United States with an interactive website could be haled into a New York court.  *See Skrodzki*, 810 F. Supp. 2d at 517; *see also Sayeedi v. Walser*, 15 Misc.3d 621, 835 N.Y.S.2d 840 (N.Y. City Civ. Ct. 2007) ("[T]he majority of [non-New York] courts have held that the usual online auction process does not rise to the level of purposeful conduct required to assert specific jurisdiction."). More to the point, Ye Olde has not alleged and cannot allege that it even utilized CLARS' website in connection with the disputed auction.

Thus, jurisdiction is not proper under CPLR § 302(a)(1).

> **2.     There Is No Personal Jurisdiction Under New York's Specific Jurisdiction Statutes Governing Tortious Actions, CPLR § 302(a)(2) and CPLR § 302(a)(3).**

To the extent Plaintiff argues that its pleaded tort claims give rise to jurisdiction, that argument likewise fails.  As an initial matter, "under New York law, where a fraud claim arises

11

out of the same facts as plaintiffs' breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am. Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir.2001) (citations and quotations omitted); *see also Skrodzki*, 810 F. Supp. 2d at 520 (holding that the fraudulent inducement claim did not support a finding of jurisdiction under CPLR § 302(a)(3) because the litigation resulted from a breach of contract). Here, Ye Olde's fraud claim arises from the same exact set of facts as its breach of contract and breach of express warranty claims, and should therefore be analyzed only under CPLR § 302(a)(1). Nonetheless, even if this Court were inclined to analyze Plaintiff's tort claim for jurisdictional purposes (under CPLR §§ 302(a)(2) or (a)(3), which confer personal jurisdiction where a defendant committed a tortious act "within or without" the state of New York), jurisdiction is still lacking.

CPLR § 302(a)(2) may provide jurisdiction where a non-domiciliary "commits a tortious act within the state." A court may only exercise personal jurisdiction pursuant to CPLR § 302(a)(2) if an officer, employee, or agent of the corporate defendant was <u>physically present</u> in New York. *See, e.g., Whitaker v. Fresno Telsat, Inc.*, 1999, 87 F. Supp. 2d 227, 231 (S.D.N.Y. 1999). Here, CLARS was never present in New York. It made no representations to Ye Olde from a New York location; nor did any of its employees or representatives travel to New York for any purpose related to Ye Olde's purchase of the Clocks. Martin Decl., ¶16. Thus, this Court lacks jurisdiction under CPLR § 302(a)(2).

Alternatively, CPLR § 302(a)(3) may provide jurisdiction where a non-domiciliary "commits a tortious act without the state causing injury to person or property within the state" where the defendant (i) regularly does or solicits business or engages in any other persistent

12

course of conduct, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from goods used or consumed or services rendered in the state. *See Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.*, 125 F. Supp. 2d 641, 649-50 (E.D.N.Y. 2000). Under this prong of New York's personal jurisdiction statute, the mere fact that the plaintiff is domiciled or a resident of New York is not enough to establish personal jurisdiction; the plaintiff must allege a more direct injury in New York. *See Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990). Here, this Court lacks jurisdiction under CPLR § 302(a)(3) because CLARS neither solicits business nor engages in persistent activities in New York, nor does CLARS derive substantial revenues from New York. Further, Ye Olde fails to allege any "direct injury" to New York in the FAC.

First, and as discussed above, CLARS does not solicit business or engage in persistent activities in New York. Martin Decl., ¶¶6-7. CLARS does not direct mass advertising to New York. *Id*. Instead, CLARS only sends catalogs of upcoming auctions to past bidders – regardless of where they reside. *Id*. Moreover, CLARS does not earmark a marketing budget for New York business. *Id*. CLARS does not travel to New York to solicit business, and does not hold auctions in New York. *Id*. Indeed, CLARS representatives have only made two business trips to New York within the past 10 years (limited to respectively retrieving items from the Metropolitan Museum of Art and Christie's to auction in California). *Id*., ¶8. CLARS does not and has not paid taxes in New York. *Id*., ¶6.

Second, CLARS does not derive substantial revenues from New York. In determining whether revenue is substantial, a court may look to the percentage of the defendant's overall revenue derived from commerce with New York, but courts may alternatively look to the absolute revenue generated by a defendant's New York commercial activities. *Light v. Taylor*,

13

2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007). "Neither approach is binding . . . [and there is] no specific dollar threshold at which revenue becomes 'substantial' for purposes of CPLR § 302(a)(3)(ii)." *Id*. Regardless of how this Court assesses this issue, Ye Olde failed to allege that CLARS derives substantial revenues from New York in the FAC.  Nor could it so allege.  In fact, very little of CLARS' revenue is generated from New York.  For example, in the time period between 2013 and 2016, only 4.12% of CLARS total revenue was generated from New York participants in CLARS' auctions.  Martin Decl., ¶9.  Indeed, prior to 2016 (the year in which Plaintiff purchased the clocks), CLARS' New York revenue had never exceeded 3.65% of its total annual revenue.  *Id*.

In terms of "absolute revenue" generated by New York bidders, during that same four year period (2013-2016), CLARS' gross revenues totaled $70,324,428.  *Id*.   The total absolute revenue generated from New York bidders during that period equaled $2,894,015 (again, which represents 4.12% of CLARS' total revenues).  *Id*.   Importantly, it is worth noting that the sales attributed to New York buyers includes those from bidders who would have participated in-person at CLARS' auctions (i.e., while visiting California).  *Id*. Accordingly, not all of the winning bids from New York residents were actually bid from New York.  Regardless, although CLARS' auctions are open to the public so that anyone can bid, it is clear that only a small portion of CLARS' revenues derive from New York bidders.

Accordingly, jurisdiction is not proper under CPLR §§ 302(a)(2), (a)(3).

### 3.    There Is No Specific Personal Jurisdiction Under the Due Process Clause.

Likewise, the exercise of specific jurisdiction over CLARS is not established under the Due Process Clause.  That Clause permits a court to exercise specific jurisdiction only where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State."

14

*Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). This rule embodies three requirements.

First, the defendant must have established "contacts with the forum State itself, not . . . contacts with persons who reside there." *Id*. at 1122. Thus, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 1123. Contacts with individual forum residents are irrelevant except to the extent that they demonstrate that the defendant has targeted and directed its activities at the forum state itself. As the Supreme Court has explained, a defendant's "contract with an out-of-state [plaintiff]" does not "automatically establish sufficient minimum contacts in the [plaintiff's] home forum;" instead, courts must evaluate "whether the defendant *purposefully established* minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (emphasis added).

Second, the contacts between the defendant and the forum state must be "contacts that the 'defendant himself' creates." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475). This rule follows from the established principle that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id*. Thus, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. (emphasis added) (citing *Burger King*, 471 U.S. at 478). Specific jurisdiction may not be based on the "'unilateral activity'" of persons other than the defendant. *Id*. at 1123 (quoting *Burger King*, 471 U.S. at 475).

Third, the contacts upon which specific jurisdiction is based must be "suit-related." *Walden*, 134 S. Ct. at 1121. Contacts that have nothing to do with the "underlying controversy" are irrelevant to specific jurisdiction. *Id*. at 1121 n.6. Indeed, this requirement is the core of what distinguishes specific jurisdiction from general jurisdiction. *Id*.; *see also Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Only contacts that satisfy all three of these requirements can support specific jurisdiction.  In other words, Ye Olde must show sufficient contacts that are (i) targeted or directed specifically at New York as opposed to other jurisdictions, and (ii) created by CLARS (rather than Ye Olde), and (iii) related to the claims Ye Olde asserts in this litigation.  Ye Olde fails to satisfy all three prongs of the *Walden* test.

*First*, Ye Olde has not alleged any facts to establish that CLARS has a specific connection to New York.  Nor could it.  CLARS does not:  have an office in New York, maintain bank accounts in New York, have a phone listing in New York, own personal or real property located in New York, or conduct public relations work or promote its interests through agents located in New York.  Martin Decl., ¶6.  Moreover, CLARS does not engage in "significant" solicitations of business, nor does it solicit business, at all, from a permanent location in New York.  *Id*., ¶7.  Rather, CLARS is a well-known auctioneer in California, which Ye Olde readily admits in its FAC.  *See* FAC, ¶ 11 (describing CLARS as a "well-known West Coast auctioneer").  Moreover, CLARS does not direct any targeted marketing to New York.  Martin Decl., ¶6.  Rather, it mails catalogs of upcoming auctions to past bidders regardless of where they reside.  *Id*., ¶7.  As such, CLARS has not established any specific contact with that "forum"; rather, it has merely contacted forum residents comprised of past participants in CLARS' auctions.  Thus, Ye Olde fails to establish the first prong of the *Walden* test.

Moreover, courts have expressly held that specific jurisdiction requires "deliberate actions by the defendant to target or direct itself towards the forum state"; merely "having an interactive website" available in the forum is not "enough."  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014); *see also Bubble Genius LLC v. Smith*, 2015 WL 4399483, at *5 (C.D. Cal. July 17, 2015) (website did not target

16

California even though California residents made purchases on it, because its operator did not "deliberately create substantial contacts with California" or intend the site to be "particularly desirable in the California market").  The same analysis is dispositive here: the mere fact that CLARS' website "is accessible to [New York] residents" falls far short of establishing that CLARS targets New York in particular.

*Second*, the FAC is devoid of facts showing that CLARS "created" contacts with New York.  CLARS did not contact Ye Olde to invite it to bid on the Clocks.  Martin Decl., ¶14.  Nor did CLARS choose to solicit business from New York.  *Id.*, ¶¶6-7.   Ye Olde alleges that it engaged in email communications with CLARS.  However, and importantly, it admits that it initiated those email communications.  *See, e.g.*, FAC, ¶¶2, 14, 17 (Ye Olde "expressly asked Clars"; Ye Olde's "principals asked Clars for a number of assurances"; Ye Olde "asked Clars for a detailed condition report"; Ye Olde "asked Clars for its guarantee").  Moreover, courts have held that email contacts "do[] not show a relation between the [defendant] and [the forum]." *Advanced Tactical*, 751 F.3d at 803; *see also Bell Paper Box, Inc. v. Trans Western Polymers*, 53 F.3d 920, 922-23 (8th Cir. 1995) (mere use of interstate mail, telephone or wire services is itself insufficient to support assertion of personal jurisdiction); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (same).

*Third*, and finally, the general facts Ye Olde alleges regarding CLARS' advertising efforts in an attempt to confer jurisdiction on this Court are insufficient.  These facts are not related to this lawsuit as required by the *Walden* test.  For example, Ye Olde alleges that CLARS advertises through its website and that it presented information regarding the Clocks in its catalog for its May 22, 2016 auction.  FAC, ¶11.  Ye Olde does not explain where CLARS published that catalog (or whether that catalog is even online) or how Ye Olde accessed that

17

information in the FAC.  To the contrary, Ye Olde's own communications establish that it learned about the Clocks through third party sources – and not through CLARS' website or catalogs directed to Plaintiff – and <u>initiated contact</u> with CLARS.  Martin Decl., ¶14.  Ye Olde further alleges that CLARS uses its website to advertise to clock collectors at large, and "encourages telephone and Internet bidders from around the world to participate in its auctions." FAC, ¶12.  But, again, Ye Olde fails to allege how such conduct relates to this litigation, or that such general statements demonstrate that CLARS targeted its advertising efforts at New York. *See In re Libor-Based Financial Instruments Antitrust Litigation*, 2015 WL 4634541, at *25 (S.D.N.Y. Aug. 4, 2015) ("Plaintiffs' argument that defendants should be subject to personal jurisdiction on the basis of marketing or sales lacking a 'link . . . to the allegedly tortious activity' would improperly create '*de facto* universal jurisdiction.'") (quoting *Adv. Tactical*, 751 F.3d at 801).  As the Seventh Circuit has put it: "[I]f having an interactive website were enough [to warrant specific jurisdiction], there is no limiting principle—a plaintiff could sue everywhere. Such a result would violate the principles on which *Walden* and *Daimler* rest." *Adv. Tactical*, 751 F.3d at 803; *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075–76 (9th Cir. 2011) (noting "[i]f the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result") (quotations and citation omitted).

This Court should dismiss this case because it lacks specific jurisdiction over CLARS.

## IV.  THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE

A corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in

18

question." 28 U.S.C. § 1391(b)(1), (c).  As discussed in detail above, this District does not have personal jurisdiction over CLARS.

Venue may be proper where "a substantial part of the events…giving rise to the claim occurred." *Id*. § 1391(b)(2).  As this Court knows, "for venue to be proper [under § 1391(b)(2)], *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original).  This test is more stringent than the minimum contacts test.  *Id*.  "Courts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Id*. (quotations omitted).  The acts of the defendant are also considered.  *See Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 432-35 (2d Cir. 2005).

Here, as discussed in detail above, the events forming the foundation of this dispute occurred in California:  The auction in question occurred in California, the Clocks auctioned were located in and shipped (by Ye Olde) from California, Ye Olde consented to CLARS' Conditions of Sale governing that auction (which occurred in California), the alleged representations about the Clocks emanated from CLARS in California, and Ye Olde communicated with CLARS' employees who were located in California about multiple issues, including but not limited to, seeking modifications to the Conditions of Sale, requesting CLARS staff to take high-resolution photographs of the Clocks, and discussing shipping logistics.  Martin Decl., ¶¶13-19.  Further CLARS helped Ye Olde coordinate the shipping of the Clocks from California.  *Id*., ¶19.  In other words, the contract was negotiated and performed in California.

Moreover, Ye Olde's FAC does not allege that the contract was negotiated in New York or that a substantial part of the events took place in New York.  Rather, the FAC asserts that

19

*"[t]his action arises out of the decision of Clars, an auction house in Oakland, California*, to offer at a public auction a matched pair of ostensibly extremely rare, 19th century Chinese clocks." FAC, ¶1 (emphases added). Ye Olde further concedes that it participated in the "*California auction*" of CLARS, a "*well-known West Coast auctioneer*" via telephone, and that it communicated with CLARS by email. *See, e.g.*, FAC, ¶¶2, 11. Ye Olde thus admits in its FAC that the significant facts giving rise to this dispute occurred in California. And, it is "axiomatic" that a plaintiff "may not amend [his] complaint through facts first alleged in an opposition brief." *Miles v. Univ. of the District of Columbia*, 2013 WL 5817657, at *9 n.4 (D.D.C. Oct. 30, 2013). Other than general statements that CLARS' website is available to the public at large, including residents of New York, Ye Olde's FAC does not allege any facts to show that the "substantial events" or "material omissions" occurred in New York. *See, generally*, FAC. Thus, this District is not a proper venue for this action.

## V.   ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

While dismissal is proper, if this Court decides not to dismiss the litigation, it should transfer this dispute to the Northern District of California pursuant to 28 U.S.C. § 1404(a) for the convenience of the witnesses and in the interest of justice.

Courts in the Eastern District of New York have adopted a two-prong inquiry to decide whether to transfer an action. *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983 (E.D.N.Y. 1991); *Frasca v. Yaw*, 787 F.Supp. 327 (E.D.N.Y. 1992). The first prong is whether the action could have been brought in the district in which the moving party seeks to have the case litigated. *Frasca*, 787 F. Supp. at 330. The second prong is "whether a transfer is warranted in light of the convenience of the parties and witnesses, and if it would be in the interest of justice." *Id*. Factors that may be considered in deciding this second prong include:

20

(1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) availability of process to compel the attendance of witnesses to testify at trial; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and finally, (10) the Court should also consider how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

*Id*. at 330-31.  Here, these factors weigh heavily in favor of a transfer of venue.

### A.      Venue Is Proper In The Northern District of California.

Plaintiff's FAC acknowledges that CLARS is incorporated in California and that its principal place of business is located in the Northern District of California.  FAC, at ¶10.  This is sufficient to establish personal jurisdiction and venue as to CLARS in that district.

### B.      The Convenience of the Parties and Witnesses And The Interest Of Justice Favor Transfer.

Next, a balancing of the *Frasca* factors warrants a transfer of the case to the Northern District of California due to convenience of the parties and witnesses, and the interest of justice:

*Convenience of the Parties*.  Plaintiff has demonstrated that California is not an inconvenient location.  As discussed above, Ye Olde, through Mr. Nichinson, participated in a California auction and traveled to California to oversee the shipment of the Clocks.  Moreover, CLARS and its employees reside in California.  As such, this factor favors a transfer.

*Convenience of the Witnesses*.  The Eastern District of New York gives heavy weight to the location of key witness and evidence; "[t]he location of relevant witnesses and other evidence is a major factor to be considered in a transfer action." *Frasca*, 787 F.Supp. at 331.  Here, the majority of the witnesses are located in California.  Martin Decl., ¶21.  As identified above, at least 9 witnesses involved in preparing the description of the Clocks, photographing the Clocks, preparing the Clocks for auction, communicating with Plaintiff, negotiating a change to the

21

Conditions of Sale, addressing the shipment of the Clocks, and handling the invoicing and payment aspects of the transaction, are employed with CLARS and reside in California. *Id*. The third-party witness and consignor of the Clocks resides in California. *Id*. In contrast, the only New York witness appears to be Plaintiff itself. This factor favors a transfer.

*Relative Means of the Parties*. As both parties are corporate entities, this factor is neutral.

*Locus of Operative Facts*. This case is based on the conduct of a California corporation, and what occurred during an auction that took place in California. As discussed above, Ye Olde concedes this point in its FAC: it participated in the "California auction" of CLARS, a "well-known West Coast auctioneer" via phone, and that it communicated with CLARS by email. *See, e.g*., FAC, ¶¶2, 11. And, CLARS and Ye Olde negotiated and performed the contract in California. Martin Decl., ¶¶13-19. The sources of evidence (documentary and testimonial) are largely located in California. As such, this factor favors a transfer.

*Availability of Process to Compel the Attendance of Witnesses*. Given that the vast majority of witnesses reside in California, California courts are far more easily situated to ensure that current and former employees of CLARS who reside in California will appear at trial. Moreover, the consignor of the Clocks (also a resident of California), would be subject to local subpoena power enforceable by California courts. This factor favors a transfer.

*Weight Accorded to Plaintiff's Choice of Forum*. "[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is . . . given reduced significance." *See Wine Markets Intern., Inc. v. Bass*, 939 F. Supp. 178, 183 (E.D.N.Y. 1996). In fact, courts have found that where an action would merely be transferred and not dismissed, the "plaintiff's choice of forum is not accorded any great significance in the analysis." *Id*. Thus, because the other factors favor

transfer, this factor should not be given great significance.

*Calendar Congestion*.  The 2017 "Federal Court Management Statistics – Comparison Within Circuits" report published on the United States Courts' website (www.uscourts.gov/statistics-reports/) reflects that the Eastern District of New York has far more case congestion than the Northern District of California.  Specifically, the Eastern District of New York currently has 13,020 pending cases compared to 9,020 in the Northern District of California.  *See* Declaration of David C. Lee ("Lee Decl."), Exh. E.  The median time (in months) "from filing to trial" is 34.5 months in the Eastern District of New York compared to 26.1 months in the Northern District of California.  *Id*.  Further, the number of aged cases (over three years old) is much higher in the Eastern District of New York: 1,942 compared to 501 for California.  *Id*.  This factor favors a transfer.

*Desirability of Having Case Tried By Forum Familiar with Substantive Law*.  Here, Ye Olde has asserted a violation of California's Consumer Legal Remedies Act (California Civil Code §§1750-1784), which arises directly out of California statutory law as alleged in the FAC. *See* FAC, ¶¶40-46.  Plaintiff's remaining claims derive from common law.  As such, given the uniqueness of California's Consumer Legal Remedies Act, California courts would naturally have more familiarity with that California-specific law than New York courts.  California courts are also equipped to handle Plaintiff's common law claims.  This factor favors a transfer.

*Practical Difficulties*.  Given the large number of witnesses residing in California, trial of this action in New York would require numerous potential witnesses (i.e., up to 9 CLARS employees) to travel to New York.  In contrast, the only Plaintiff representative identified in the communications between Ye Olde and CLARS is Jason Nichinson (a principal of Ye Olde). Accordingly, the practical difficulties of coordinating the travel, trial witness order, witness

23

availability, and witness logistics for a New York trial is greater than that required for a California trial requiring only a single New York witness.  This factor favors a transfer.

*Interests of Justice Favor Transfer.*  CLARS is a California corporation that, like most businesses operating in 2017, has a website.  Martin Decl., ¶7.  While CLARS is well-known in California and on the West Coast, it has made no concerted effort to expand its footprint into New York (or, more specifically, the Eastern District of New York).  *Id.*, ¶6.  Moreover, Ye Olde consented to Conditions of Sales governing auctions held in California, and via written emails, sought to modify (i.e., negotiate) the terms of those Conditions of Sale.  *Id.*, ¶¶14, 17.  Nonetheless, Ye Olde—a sophisticated business entity that purchased two clocks valued at over half a million dollars—seeks to drag CLARS into court in New York, despite CLARS' lack of presence or connection with New York.  Permitting that to occur in this case would expose out-of-state businesses, such as CLARS, to being haled into court anywhere in the United States if they permit customers to participate in public auctions over the phone or communicate via email.  Many circuit courts have spoken out against this type of result in the personal jurisdiction context.  *See Adv. Tactical*, 751 F.3d at 803; *see also CollegeSource, Inc.*, 653 F.3d at 1075–76.  Given that all of the central factual underpinnings occurred in California, were undertaken or observed by witnesses located in California, and that at least one claim asserted by Ye Olde arises from California statutory law, the interests of justice favor a transfer of this case.  Thus, if this Court does not dismiss this case, it should transfer it to the Northern District of California.

## VI.    CONCLUSION

Based on the foregoing, CLARS respectfully requests dismissal under Rule 12(b)(2) or 12(b)(3) or, in the alternative, transfer of this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated:  October 12, 2017                    Respectfully submitted,


                                            s/David C. Lee
                                            David C. Lee, CA Bar No. 193743
                                            (Pro Hac Vice pending)
                                            Jill N. Jaffe, CA Bar No. 286625
                                            (Pro Hac Vice pending)
                                            Nossaman LLP
                                            50 California Street, 34th Floor
                                            San Francisco, CA 94111
                                            Telephone:  415.398.3600
                                            Facsimile:   415.398.2438

25