**FILED**
**CLERK**

11:49 am, Apr 17, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
YE OLDE TIME KEEPERS, INC.,

               Plaintiff,

       -against-

C.R. MARTIN AUCTIONEERS, INC.
*doing business as* Clars Auction Gallery,

              Defendant.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-04377 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Zukerman Gore Brandeis & Crossman, LLP**
*Counsel for the Plaintiff*
Eleven Times Square
New York, NY 10036
      By:    Ted Poretz, Esq., Of Counsel

**Nossaman LLP**
*Co-Counsel for the Defendant*
50 California Street 34th Floor
San Francisco, CA 94111
      By:    Jill Nicole Jaffe, Esq.,
             David C. Lee, Esq. Of Counsel

**Cowan, DeBaets, Abrahams & Sheppard LLP**
*Co-Counsel for the Defendant*
41 Madison Avenue
New York, NY 10010
      By:    Eleanor Martine Lackman, Esq., Of Counsel

**SPATT, District Judge:**

       The Plaintiff Ye Olde Time Keepers, Inc. (the "Plaintiff" or "Time Keepers") brought this

breach of contract action against the Defendant C.R. Martin Auctioneers, Inc. doing business as

Clars Auction Gallery (the "Defendant" or "Clars") based on a pair of rare 19th century Chinese

clocks purchased by the Plaintiff at an auction hosted by the Defendant. The Plaintiff alleges that

the clocks sold by the Defendant are recently-manufactured duplicates, and that the Defendant fraudulently induced the Plaintiff to purchase them.

Presently before the Court is a motion by the Defendant to dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(2); or for improper venue under 12(b)(3). In the alternative, the Defendant asks the Court to transfer venue to the United States District Court for the Northern District of California (the "NDCA") pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"). For the following reasons, the Defendant's motion to dismiss the complaint pursuant to Rules 12(b)(2) or 12(b)(3) is denied without prejudice. The Defendant's motion to transfer venue to the NDCA pursuant to Section 1404(a) is denied.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the Plaintiff's first amended complaint, as well as the parties' submissions. *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013) ("[I]n deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue."); *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 566–67 (S.D.N.Y. 2012) (stating that when deciding a motion to dismiss for lack of jurisdiction, a court may consider materials outside the pleadings, but must credit plaintiffs' averments of jurisdictional facts as true" (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.,* 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000); *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996))).

In deciding a motion to dismiss for lack of personal jurisdiction, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor,

notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir. 1993).

The Plaintiff is a New York corporation which buys and sells rare and antique clocks and timepieces. It is managed and owned by Dennis Nichinson and his son, Jason Nichinson (the "Nichinsons").

The Defendant is a California corporation which conducts regular auctions. The Defendant's auctions are conducted live at its Oakland, California offices, but it advertises online, and accepts bids via telephone and the internet. On its website, www.clars.com, the Defendant boasts that it "works with buyers and sellers throughout the world." (Pl.'s Ex. A).

The specific auction at issue was held on May 22, 2016 (the "auction"). The Defendant advertised the auction on its website, www.clars.com, and sent catalogs to past buyers. Prior to May 22, 2016, the Plaintiff had never purchased any items from the Defendant, and therefore was made aware of the auction by visiting the Defendant's website.

The auction included Lot 6526, which consisted of a "rare pair of Chinese ormolu Automaton clocks, Guangzhou Workshop (the "[c]locks")." (Decl. of Redge Martin ¶ 13 (internal alteration omitted)). On May 20, 2016, Jason Nichinson emailed the Defendant to express his interest in bidding on the Clocks. He asked for a condition report on the clocks, and requested that the Defendant set up a phone bid for him. The email listed two phone numbers, both of which had New York "516" area codes. However, the email did not state that Jason Nichinson was located in New York or that he was interested in purchasing the clocks for a New York company. Clars emailed Jason Nichinson to inform him that he was registered to bid on the auction by telephone, and that all telephone bids are subject to the Clars' conditions of sale. Clars also sent a condition report to Jason Nichinson, and confirmed that the clocks were authentic ancient Chinese clocks.

Also relevant here, at some point before the auction, the Nichinsons supplied the Defendant with a New York State resale certificate so that the Plaintiff would not be charged sales tax; and also gave the Defendant a New York State driver's license for identification. It is not clear whose driver's license was provided.

On May 22, 2016, the Nichinsons watched the auction in real time at www.liveauctioneers.com, and participated in the bidding by telephone. Liveauctioneers.com is a New York company that advertises upcoming auctions and provides live video to those auctions. Forty-five bids were placed for the clocks, and the Nichinsons won the bidding at the sum of $520,000.

Clars and Jason Nichinson exchanged several emails in which Jason Nichinson requested photographs of the clocks; made plans to travel to California; and asked that the rescission period be extended from 21 days to 30 days. Clars agreed to the extension of the rescission period. The Court notes that Jason Nichinson never represented that he was emailing Clars from New York. However, the invoice from Clars shows that the clocks were being sent to Jason Nichinson in East Rockaway, New York for resale.

Time Keepers eventually paid the full price after the rescission period ended. Payment was sent via wire transfer from Time Keepers' Chase account in East Rockaway, New York.

Jason Nichinson traveled to California to oversee packaging and shipping. The clocks were shipped to Hong Kong for inspection by Time Keepers' clock expert.

Time Keepers' expert informed the Nichinsons that the clocks were counterfeit. Several weeks later, after the clocks were shipped, Jason Nichinson contacted the Defendant to inform Clars that the clocks were not genuine.

## B. The Relevant Procedural History

On July 24, 2017, the Plaintiff filed its complaint. After serving the Defendant on August 1, 2017, the Plaintiff filed an amended complaint as a matter of right on August 8, 2017. The amended complaint brings claims for common law fraud; breach of contract; breach of express warranty; and violation of the California Consumer Legal Remedies Act. The Plaintiff seeks damages, costs, and attorneys' fees.

On October 12, 2017, the Defendant filed the instant motion to dismiss.

## II. DISCUSSION

## A. As to the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(2)

### 1. The Standard of Review Under Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) authorizes a party to seek dismissal on the ground that the Court lacks personal jurisdiction over him or it. However, as the party attempting to invoke the Court's jurisdiction, it is the Plaintiff that bears the burden of showing that personal jurisdiction exists over the Defendant. *See Metropolitan Life Ins.*, 84 F.3d at 566.

"Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.* (citing *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). In doing so, "the plaintiff need only make a *prima facie* showing," and "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).

## 2. The Applicable Legal Framework—A Two-Part Test

In resolving questions of personal jurisdiction in a diversity action, the Court must conduct a two-part inquiry: "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *See Metropolitan Life Ins*, 84 F.3d at 567.

### a. Part One: The Defendant's Amenability to Suit under New York's Laws

First, the Court must determine whether, under the facts and circumstances of a given case, New York law supports the exercise of either general jurisdiction (also called "all-purpose jurisdiction") or specific jurisdiction (also called "case-linked jurisdiction"). *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General jurisdiction "permits a court to adjudicate any cause of action against the [] defendant, wherever arising, and whoever the plaintiff," while specific jurisdiction is only "available when the cause of action sued upon arises out of the defendant's activities in [the] state." *Id.* (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

As the Plaintiff concedes that this Court cannot exercise general jurisdiction over the Defendant, the Court will not engage in a discussion of the standard of general jurisdiction. Instead, the Court proceeds to specific jurisdiction.

### i. Specific (or "Case-Linked") Jurisdiction

The statutory basis for specific jurisdiction is found in New York's long-arm statute, which, as to causes of action specifically arising from the Defendant's conduct in the state, allows the Court to exercise personal jurisdiction over a non-domiciliary who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act [outside] the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a); *see also Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323–24 (S.D.N.Y. 2015) ("In addition, a defendant may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if he engages in the [acts enumerated in the statute] either in person or through an agent *and* such acts relate to an asserted claim . . . ." (emphasis in original)).  Therefore, in order to exercise specific jurisdiction over an individual or entity, that non-domiciliary must have engaged in one of the four enumerated acts above, and the causes of action must relate to one of those four acts.

### b.  Part Two: The Constitutional Inquiry

"Whether specific or general, . . . the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process."  *Brown*, 814 F.3d at 625.  Thus, if the requirements of CPLR § 302 are satisfied, the Court must address whether the exercise of jurisdiction would comport with the Due Process Clause.  *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted).

"The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Id.* at 60 (quoting *Chloé*, 616 F.3d at 164). As the Second Circuit has explained:

> The "minimum contacts" inquiry requires us to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  [*Chloé*, 616 F.3d at 164.]  The "reasonableness" inquiry requires us

7

to decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.*

*Id.*

With these legal principles in mind, the Court turns to the parties' substantive contentions.

### 3. Application to the Plaintiff's Case

#### a. As to Whether the Court Can Exercise Specific Jurisdiction Over the Defendant

The Plaintiff concedes that this Court is unable to exercise general jurisdiction over the Defendant, but contends that specific jurisdiction can be exercised over it pursuant to subsections (a)(1), (a)(3)(i), (a)(3)(ii) of N.Y. C.P.L.R. § 302.

##### i. As to Whether the Defendant transacts any business within the state or contracts anywhere to supply goods or services in the state Pursuant to § 302(a)(1)

The Plaintiff argues that jurisdiction over the Defendant pursuant to § 302(a)(1) is available because of the extent of the parties' transaction, and because of the Defendant's interactive website. For its part, the Defendant states that the parties' transaction fails to meet the standards of §302(a)(1), and the interactive website relied upon by the Plaintiff is owned and operated by a third-party. The Court finds that the Plaintiff has not made a *prima facie* showing of jurisdiction under § 302(a)(1).

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC,* 450 F.3d 100, 103 (2d Cir. 2006). "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and

the actions that occurred in New York." *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d

Cir. 2007) (internal quotation marks and citation omitted).

When considering whether a defendant "transacted business," New York courts rely on the

constitutional standard set forth by the Supreme Court: "whether the defendant's conduct

constitutes 'purposeful[ ] avail[ment]' 'of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws.' " *Best Van Lines,* 490 F.3d at 246–

47 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)

(alterations in original)).

Section 302(a)(1) "'is a single act statute and proof of one transaction in New York is

sufficient to invoke jurisdiction, even though the defendant never enters New York' as long as the

requisite purposeful activities and the connection between the activities and the transaction are

shown." *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,* 21 A.D.3d 90, 93–94, 797 N.Y.S.2d

439, 442 (N.Y. App. Div. 2005) (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467,

527 N.Y.S.2d 195, 522 N.E.2d 40 (N.Y. 1988)).

To determine whether a party in a contract action has "transacted business" within the

meaning of Section 302(a)(1), courts focus primarily on the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New York
> corporation; (ii) whether the contract was negotiated or executed in New York and
> whether, after executing a contract with a New York business, the defendant has
> visited New York for the purpose of meeting with parties to the contract regarding
> the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv)
> whether the contract requires [the defendant] to send notices and payments into the
> forum state or subjects them to supervision by [a] corporation in the forum state.

*Sunward Elec., Inc. v. McDonald,* 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car*

*Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996)).  Another important factor is

whether the contract is to be performed in New York.  *See Cooper, Robertson & Partners, L.L.P.*

*v. Vail,* 143 F.Supp.2d 367, 371 (S.D.N.Y. 2001) (stating that "[i]n determining jurisdiction, the place of performance is more critical than the place of the execution of a contract"). No single factor is dispositive. Rather, a finding of personal jurisdiction must be based upon the totality of the circumstances. *Agency Rent A Car,* 98 F.3d at 29.

All of the above factors weigh against asserting jurisdiction under § 302(a)(1). The agreement between the parties was a one-time agreement for the purchase of the clocks. The negotiations that happened before the auction were conducted via email, and were initiated by the Nichinsons. "[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Worldwide Futgol Assoc., Inc. v. Event Entm't, Inc.,* 983 F. Supp. 173, 177 (E.D.N.Y. 1997); *see also United Computer Capital Corp. v. Secure Prods., L.P.,* 218 F. Supp.2d 273, 278 (N.D.N.Y. 2002) ("Where a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York.").

In fact, even when a defendant has communicated "with plaintiff in New York by phone, fax and possibly mail . . . 'no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 788–89 (2d Cir. 1999) (quoting *Mayes v. Leipziger,* 674 F.2d 178, 185 (2d Cir. 1982)).

As the Second Circuit has held, where, as here, the contract "was to be performed entirely outside of New York . . . [t]he mere fact that [the Defendant] engaged in *some* contact with a New

York purchaser does not mean that [the Defendant] transacted business in New York." *Berkshire Capital Group, LLC v. Palmet Ventures, LLC,* 307 F. App'x 479, 481 (2d Cir. 2008). However, under some limited circumstances, a party may be found to have "transacted business" on the basis of telephone or internet communications. For that to be the case, the Court must find that the communications flowing into New York involve a substantial transaction with its "center of gravity" in New York. *See Maranga v. Vira,* 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'" (quoting *Wilhelmshaven Acquisition Corp. v. Asher,* 810 F. Supp. 108, 112 (S.D.N.Y. 1993))); *see also Whitaker v. Fresno Telsat, Inc.,* 87 F. Supp. 2d 227, 230 (S.D.N.Y. 1999) ("Only if the purpose of the calls is for the defendant to actively participate in business in New York, can they alone support a finding of New York long arm jurisdiction under C.P.L.R. § 302(a)(1)." (internal quotation marks and alteration omitted)).

Here, the center of gravity of the transaction was clearly California. The auction took place in California; Jason Nichinson traveled to California to arrange for the clocks to be shipped; and the Defendant did not take any action that brought it into contact with New York other than phone calls and emails. Where "a defendant's contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a center of gravity well outside the state, there is no personal jurisdiction under C.P.L.R. § 302(a)(1)." *DirecTV Latin America, LLC v. Park 610, LLC,* 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010); *Bank Brussels Lambert,* 171 F.3d at 787–89 (finding no section 302(a)(1) jurisdiction over a Puerto Rican law firm retained by New York banks to provide opinion in connection with transactions despite telephone communications regarding those transactions, where the defendant was solicited

outside of New York to perform their services, all legal work was performed in Puerto Rico, and there was no physical presence of the defendant in New York).

As to the Defendant's website, while it is true that a defendant can be held to transact business in New York through a highly interactive website, *see Best Van Lines*, 490 F.3d at 252 ("[A] website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant transacts any business in New York—that is, whether the defendant, through the website, purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." (internal citations and quotation marks omitted)), the Defendant's own website is not interactive. That is, the Plaintiff has not alleged that a person is able to purchase or bid on items from the Defendant's website. The Defendant's website merely advertises its auctions, and those items up for auction. It does invite potential bidders to participate in the auction, but the auction itself is done in person, on the phone, or through a third-party website [www.liveauctioneers.com](www.liveauctioneers.com).

The Plaintiff contends that liveauctioneers.com "appears to be some kind of agent for Clars," (Decl. of Dennis Nichinson ¶ 4), but does not offer any evidence in support of that conclusion. In fact, the copy of one of the web pages from liveauctioneers.com, provided by the Plaintiff, states that it is a "global community of . . . auction houses," (Pl.'s Ex. A), which means that the website offers its services to auction houses around the globe.

Generally, a website that only provides information about an item for sale and contact information for the seller, without any ability to directly purchase the items through the website is considered "passive" and therefore "insufficient to demonstrate that the website operator has purposefully availed itself of the privilege of conducting activities within New York." *Zibiz Corp. v. FCN Tech. Solutions,* 777 F. Supp. 2d 408, 423 (E.D.N.Y. 2011); *ISI Brands, Inc. v. KCC Int'l,*

*Inc.,* 458 F.Supp.2d 81, 86 (E.D.N.Y.2006) (Spatt, J.) ("Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1)."); *Aqua Prods., Inc. v. Smartpool, Inc.,* No. 04–CV–5492, 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005) ("Passive websites which primarily make information available to viewers, but do not permit an exchange of information, fail to justify the exercise specific jurisdiction over a non-domiciliary.").

Here, bidders cannot place bids on the Defendant's website—they must bid through the third-party site. Therefore, the Court finds that the Defendant did not transact business in New York State under the meaning of § 302(a)(1) due to the nature of its website.

Accordingly, the Plaintiff has not made a *prima facie* showing that jurisdiction over the Defendant is proper under § 302(a)(1).

### ii. As to Whether the Defendant Committed a Tortious Act Outside the State And Injured the Plaintiff Inside the State Pursuant to § 302(a)(3)

The Defendant argues that the Plaintiff's tort claim does not give rise to jurisdiction, because it is duplicative of the Plaintiff's breach of contract claim. For its part, the Plaintiff states that it has alleged that the Defendant had a duty separate and apart from the duty to perform the contract, and that the factual situation is similar to that in *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980), in which the Second Circuit found that the plaintiff's fraud claim was not duplicative of its contract claim, *id.* at 899. The Court finds that the Plaintiff has alleged sufficient facts to maintain a parallel tort action, and that the tortious conduct occurred outside the state, and injured the Plaintiff in New York.

A plaintiff may not sustain a tort claim alongside a claim for breach of contract "unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, New York*

*Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (citing *Clark–Fitzpatrick v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y. 1987)). The "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." *Clark-Fitzpatrick*, 70 N.Y.2d at 389. If the basis of the tort claim is "is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Bayerische Landesbank*, 692 F.3d at 58 (citing *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y. 1995)).

Relevant here, a plaintiff *may* maintain parallel actions for tort and contract where the allegations "involve misstatements and omissions of present facts, not contractual promises regarding prospective performance." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007). This is because "[a] warranty is not a promise of performance, but a statement of present fact." *Id.* (quoting *First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 690 N.Y.S.2d 17, 21 (N.Y. 1999)).

As to this distinction between material misstatements of present facts and promises of future performance, the Second Circuit has held:

> Defendant's allegations in this case involve misstatements and omissions of present facts, not contractual promises regarding prospective performance. A misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty . . . . That the alleged misrepresentations would represent, if proven, a breach of the contractual warranties as well does not alter the result. A plaintiff may elect to sue in fraud on the basis of misrepresentations that breach express warranties. Such cause of action enjoys a longstanding pedigree in New York.

*Id.* (internal quotation marks and citations omitted).

Here, the Court finds that the Plaintiff has alleged that the Defendant made a material misstatement regarding present facts. Specifically, that the clocks were genuine antique Chinese

clocks. The Plaintiff's cause of action for fraud is not based on the Defendant's failure to perform the contract. *See, e.g., Slapshot Beverage Co., Inc. v. Southern Packaging Machinery, Inc.,* 980 F. Supp. 684 (E.D.N.Y. 1997) (Spatt, J.) ("The essence of the alleged misstatements is that SPI would satisfactorily perform the contract. Thus, plaintiff is merely attempting to transform a breach of contract into a tort for jurisdictional purposes. Such characterizations are not a basis to ground jurisdiction under New York's long arm statute.").

As the Plaintiff points out, this case is factually similar to *Hargrave*, 636 F.2d 897. In that case, the Second Circuit held that the plaintiff could maintain causes of action sounding in both contract and tort where "[the defendant] is alleged to have knowingly misrepresented the material existing fact that the vines were healthy. Plaintiffs assert they relied on the misrepresentations, paid for the vines, and sustained injury because they were in fact diseased. These allegations state a claim for fraud . . . ." *Hargrave*, 636 F.2d at 899. Similarly, here the Plaintiff alleges that the Defendant knowingly misrepresented the material existing fact that the clocks were ancient Chinese clocks. The Plaintiff relied on these misrepresentations, and sustained injury because the clocks are allegedly replicas. Therefore, the Plaintiff is able to maintain its claim for fraud, as it alleges that the Defendant violated a duty independent of the contract.

Furthermore, the injury that the Defendant's allegedly fraudulent misrepresentations caused was felt by the Plaintiff in New York. When the Plaintiff relied on the Defendant's misstatements, it sent money to the Defendant from its bank in New York. Again, *Hargrave* is instructive. There, the Second Circuit held that:

> One immediate and direct "injury" Oki's alleged tortious misrepresentations caused to plaintiffs was the loss of the money paid by them for the diseased vines. That injury was immediately felt in New York where plaintiffs were domiciled and doing business, where they were located when they received the misrepresentations, and where the vines were to be shipped.

*Id.* at 900.  Here too, the Plaintiff sent money from its New York bank; and the Plaintiff is located and domiciled in New York.  Dennis Nichinson states that the Defendant's misrepresentations were sent to the Plaintiff in New York.  Although the clocks were sent to Hong Kong, their ultimate destination was New York.

Therefore, the Defendant's tortious act injured the Plaintiff in New York.  *Bank Brussels Lambert*, 171 F.3d at 792 ("Although the alleged omissions in this case occurred in Puerto Rico, New York was the place where BBL first disbursed its funds to Arochem. . . . It was also this disbursement that was the first step in the process that generated the ultimate economic loss to BBL. . . . [T]he disbursement of funds in this case was thus the first effect of the tort that caused the injury—or, alternatively stated, the 'original event that caused the injury.'  Under the situs-of-injury test, the "original event" that caused the economic harm to BBL was thus the disbursement of the funds, and BBL's injury occurred in New York for § 302(a)(3) purposes." (internal citations omitted)); *Miller Inv. Tr. v. Xiangchi Chen*, 967 F. Supp. 2d 686, 696 (S.D.N.Y. 2013) ("[A] number of cases in the Second Circuit and this District hold that the original event leading to the injury in a misrepresentation action is the plaintiff's reliance on the misrepresentations." (collecting cases)); *Palace Expl. Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 435 (S.D.N.Y. 1998) "[P]laintiff's reliance in New York on defendant's misrepresentation fixes the situs of the injury in New York. (collecting cases)); *Bankers Tr. Co. v. Mora*, 523 F. Supp. 285, 287 (S.D.N.Y. 1981) ("All payments to the defendant were sent from New York . . . , thus there was clearly injury in this state.").

The Court now turns to determine whether the Plaintiff can satisfy one of the two sub-prongs of § 302(a)(3).

### A. As to Whether the Defendant Regularly Does or Solicits Business, or Engages in Any Other Persistent Course of Conduct, or Derives Substantial Revenue from Goods Used or Consumed or Services Rendered, in New York State Pursuant to § 302(a)(3)(i)

The Plaintiff contends that the Court may exercise jurisdiction over the Defendant because the Defendant regularly transacts a significant amount of business in the state. The Court finds that it cannot exercise jurisdiction over the Defendant pursuant to § 302(a)(3)(i) because courts in this circuit have found that jurisdiction cannot be exercised over a corporation who derives less than 5% of its overall revenue from New York customers.

Redge Martin, the President of Clars submitted an affidavit stating that:

> for the years 2013–2017, only 4.12% of [the Defendant's] revenue was generated from New York buyers. In fact, prior to 2016 . . . , [the Defendant's] New York revenue had never exceeded 3.65 of its total annual revenue. In terms of "absolute revenue" generated by New York bidders, during that same four year period (2013–2016), [the Defendant's] gross revenues totaled $70,324,428. The total absolute revenue generated from New York bidders during that period equaled $2,894,015 (4.12% of [the Defendant's] total revenues). These figures include sales attributed to New York buyers who participated at CLARS' auctions in person (i.e., while visiting California).

(Decl. of Redge Martin ¶ 9).

"To establish that a defendant does or solicits business in New York, it must be shown that his overall contact with New York is substantial enough to make it reasonable to subject him to jurisdiction and feasible for him to defend here." *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 339 (E.D.N.Y. 2013) (quoting *Murdock v. Arenson Int'l USA, Inc.,* 157 A.D.2d 110, 113, 554 N.Y.S.2d 887 (N.Y. App. Div. 1990) (internal alterations and quotation marks omitted). To that end, "[d]istrict courts in this Circuit agree that where a foreign corporation derives less than five percent of its overall revenue from sales in New York, such sales are not substantial enough to force a foreign defendant to litigate in New York." *Copterline Oy v. Sikorsky Aircraft Corp.*, 649

F. Supp. 2d 5, 16–17 (E.D.N.Y. 2007) (collecting cases). As the Defendant's New York revenues account for less than 5% of its revenue, the Defendant cannot be said to regularly solicit business or derive substantial revenue from New York.

Therefore, the Plaintiff has failed to make a *prima facie* showing of jurisdiction under § 302(a)(3)(i).

### B. As to Whether the Defendant Expected or Should Have Reasonably Expected the Act to Have Consequences in New York State and Derives Substantial Revenue from Interstate or International Commerce Pursuant to § 302(a)(3)(ii)

#### 1. As to the Defendant's Reasonable Expectation

The test for determining whether a defendant "expects or should reasonably expect" his actions to have consequences in New York is objective, rather than subjective. *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 241 (2d Cir. 1999); *Tri–Coastal Design Group v. Merestone Merch., Inc.,* 2006 WL 1167864 *4 (S.D.N.Y. 2006).

Here again, the *Hargrave* decision is instructive. As in *Hargrave*, "[t]his is not a case where a defendant commits a business tort such as unfair competition or diversion of opportunities in one state and the ultimate result is a loss of profits to the plaintiff which is fortuitously domiciled in another state." *Hargrave,* 636 F.2d at 900. Rather, this is a case where the Defendant allegedly made a misrepresentation to the Plaintiff in New York to induce the Plaintiff to enter into a transaction. The Defendant knew that the Plaintiff was in New York—the Nichinsons provided the Defendant with a New York State resale certificate, a New York State driver's license, and a New York area phone number. The invoice was sent to Jason Nichinson in New York, and it noted that it was for out of state resale. Therefore, like the Defendant in *Hargrave*, "the immediate consequence which [the Defendant] foresaw, indeed which it sought to bring about by its sales representations, was payment to it directly by a New York domiciliary." *Id.*; *see also Related*

*Companies, L.P. v. Ruthling*, No. 17-CV-4175, 2017 WL 6507759, at *5 (S.D.N.Y. Dec. 18, 2017) ("[U]nder New York law, a party sending fraudulent misrepresentations into New York should reasonably expect the act to have consequences in New York. . . . Here, Du repeatedly directed false statements via email to plaintiffs in New York and the content of those messages plausibly suggests that Du knew and intended his actions to have consequences in New York."); *Palace Expl.*, 41 F. Supp. 2d at 436 (relying on *Hargrave*, and finding that the defendant expected or should have reasonably expected its act to have consequences in New York where the defendant made misrepresentations to a New York plaintiff to induce payment from the plaintiff (further internal citations omitted)).

Therefore, the Defendant reasonably expected, or should have reasonably expected, that its misrepresentations would have consequences in New York.

### 2. As to Whether the Defendant Derives Substantial Revenue from Interstate or International Commerce

The Plaintiff asks the Court to make certain inferences regarding the Defendant's interstate and international revenue. In essence, the Plaintiff states that since the Defendant's New York revenues total 4%, the Court should draw the inference that the Defendant, which holds itself out as an international auction house, derives a substantial portion of its revenue from interstate or international commerce. The Defendant contends that the Plaintiff has failed to come forward with any evidence demonstrating that the Defendant derives substantial revenue from interstate or international commerce. The Court, in its discretion, orders limited jurisdictional discovery on the issue of the Defendant's interstate and international commerce, as such information is solely in the Defendant's possession.

While the Court declines to make the inferences requested by the Plaintiff, the Court finds that the Plaintiff's point is well-taken in that the Defendant alone has evidence of whether it derives

substantial revenue from interstate or international commerce. The Defendant has not provided any documentation or affidavits regarding its interstate or international commerce. The Defendant's website states that it "works with buyers and sellers throughout the world," and "the online auction catalog is distributed to more than 100,000 dealers and collectors worldwide." (Pl.'s Ex. A). As the Plaintiff points out, the Defendant's sales in New York alone account for more than 4% of its revenue. Courts "have found that interstate revenue was substantial where, as a percentage of total revenue, that revenue was greater than five percent." *Related Companies*, 2017 WL 6507759, at *8 (collecting cases). If revenues from other states account for even one percent of the Defendant's revenue, jurisdiction pursuant to § 302(a)(3)(ii) would be proper.

Therefore, the Court finds that the Plaintiff is entitled to limited jurisdictional discovery as to the Defendant's interstate and international commerce. "Courts enjoy great discretion in deciding whether to order jurisdictional discovery before resolving motions to dismiss for lack of personal jurisdiction." *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 561 (S.D.N.Y. 2005) (citing *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003)), *aff'd*, 538 F.3d 71 (2d Cir. 2008).

"It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194–96 (E.D.N.Y. 2014) (citing, *inter alia*, *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 208 (2d Cir. 2003) ("At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that SKM participated directly in a conspiracy, the effects of which were purposefully directed at the United States. Remand will provide the

opportunity for full consideration by the court of the meeting in Korea with regard to the question of personal jurisdiction."); *APWU*, 343 F.3d at 627 ( "[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction.")).

The Plaintiff has made a sufficient start, or a threshold showing, that there is a basis for jurisdiction under § 302(a)(3)(ii). *See Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70–71 (E.D.N.Y. 2006) (collecting cases where "district courts in this Circuit have ordered jurisdictional discovery where plaintiff made less than a *prima facie* showing but made a sufficient start toward establishing personal jurisdiction" (internal citations and quotation marks omitted)); *see also Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002) (stating that a district court may order jurisdictional discovery even where a plaintiff has not made a *prima facie* showing of jurisdiction).

Here, while the Plaintiff does not offer any specific evidence regarding the Defendant's interstate and international revenues, "dismissal for lack of personal jurisdiction is inappropriate under 302(a)(3)(ii), even where there is no proof that a defendant derives substantial revenue from interstate or international commerce, where that knowledge is peculiarly under the control of [the defendant], and may come to light in the course of [s]ubsequent discovery." *Related Companies*, 2017 WL 6507759, at *5 (granting limited jurisdictional discovery prior to ruling on the defendant's motion) (quoting *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008)).

Accordingly, the Court finds that the Plaintiff has made a sufficient start towards demonstrating that the Court can exercise personal jurisdiction under § 302(a)(3)(ii), and the Court orders limited jurisdictional discovery on the issue of the Defendant's interstate and international

revenue.  The Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(2) is denied without prejudice with leave to renew at the close of jurisdictional discovery.

**B.  As to the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(3)**

For the same reasons that the Defendant's motion to dismiss pursuant to Rule 12(b)(2) is denied without prejudice, its motion to dismiss pursuant to Rule 12(b)(3) is also denied without prejudice.

28 U.S.C. § 1391 ("Section 1391") states that "[a] civil action may be brought in (1) a judicial district in which any defendant resides . . . ."  28 U.S.C. § 1391(b).  "[A]n entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ."  *Id.* at (c)(2).  "Essentially section 1391(c) equates jurisdiction with venue for corporate defendants."  *Laumann Mfg. Corp. v. Castings USA, Inc.,* 913 F. Supp. 712, 719 (E.D.N.Y. 1996).

Therefore, as the question of personal jurisdiction bears directly on the Defendant's motion to dismiss for improper venue, the motion is denied without prejudice with leave to renew upon the close of jurisdictional discovery.

**C.  As to the Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).**

**1.  The Applicable Law**

Section 1404 allows for transfer to any "district or division" where the action might have been brought.  Such transfer is allowed "for the convenience of the witnesses or parties and in the interests of justice."  28 U.S.C. § 1404(a).  The burden on such a motion is on the party seeking transfer,  *Longo v. Wal–Mart Stores, Inc.,* 79 F. Supp. 2d 169, 170–71 (E.D.N.Y. 1999), and its

burden is clear and convincing evidence, *Pecorino v Vutec Corp.*, 934 F. Supp. 2d 422, 429 (E.D.N.Y. 2012) (Spatt, J.).

When considering whether the discretion to transfer should be exercised, the Court considers first whether venue is proper in the proposed transferee district. *Longo*, 79 F. Supp. 2d at 171; *Laumann Mfg.*, 913 F. Supp. at 720; *see* 28 U.S.C. § 1404(a) (allowing for transfer to any district where the action "might have been brought"). If the proposed venue is proper, the court then considers whether transfer will serve the convenience of witnesses and parties and is in the interests of justice.

To make this latter determination, the court looks to several factors, including: (1) convenience of witnesses; (2) convenience of parties; (3) locus of operative facts; (4) availability of process to compel the attendance of unwilling witnesses; (5) location of relevant documents and other sources of proof; (6) relative means of the parties; (7) relative familiarity of the forum with the governing law; (8) weight accorded to the plaintiff's choice of forum and (9) the interests of justice. *See, e.g., Blass v. Capital Int'l. Security Grp.*, No. 99–cv–5738, 2001 WL 301137, at *4 (E.D.N.Y. March 23, 2001); *Longo,* 79 F. Supp. 2d at 171.

### 2. Application to the Facts

#### a. As to Whether the Action Could Have Been Brought in the NDCA

The Defendant is incorporated in California, and its principal place of business in California. Therefore, venue would have been proper in the NDCA. See 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides . . . ."). Therefore, the Court considers the factors that determine whether transfer would serve the convenience of witnesses, parties, and the interests of justice.

### b. As to the Convenience of Witnesses and Parties

The Defendant is a California corporation, and it represents that approximately nine witnesses are located in California. Several witnesses also live in Beijing and Hong Kong. However, the convenience of witnesses who reside in neither the current nor the transferee forum is irrelevant when considering a motion to transfer. *See NBA Properties, Inc. v. Salvino, Inc.*, No. 99 CIV. 11799 AGS, 2000 WL 323257, at *6 (S.D.N.Y. Mar. 27, 2000); *Wechsler v. Macke Int'l Trade, Inc.,* No. 99 Civ. 5725, 1999 WL 1261251, at *6 (S.D.N.Y. Dec.27, 1999). The Plaintiff is a New York corporation, and its four employees, including the Nichinsons, reside in New York.

"When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district. To succeed on a transfer motion, the moving party must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y.2004) (internal citations and quotation marks omitted); *see also Caldwell v. Slip–N–Slide Records, Inc.*, No. 10 Civ. 9106, 2011 WL 3251502, at *3 (S.D.N.Y. July 26, 2011) ("In a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would [be] inconvenienced if the suit were to remain in the forum chosen by plaintiff.").

The Defendant does not detail what testimony any of the nine witnesses in California will offer. In fact, the Defendant does not even give the name of the "consignor for the clocks." As the Defendant fails to "explicitly identify non-party witnesses that are located in California [and describe their testimony] . . . , th[e] [convenience of witnesses] factor weighs against transfer . . . ." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 618 (S.D.N.Y.

2016); *see also Herbert Ltd. Partnership v. Electronic Arts Inc.,* 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).

Furthermore, as the transfer to California would only shift any inconvenience from the Defendant to the Plaintiff, the convenience of the parties factor weighs against transfer. *See Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003) ("The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff.").

### c. As to the Locus of Operative Facts

"Where the operative facts occurred is an obvious factor to consider." *Pall Corp. v. PTI Technologies, Inc.,* 992 F. Supp. 196, 200 (E.D.N.Y. 1998). "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *Purcell Graham, Inc. v. National Bank of Detroit,* No. 93 Civ. 8786 (MBM), 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994) (citations omitted) (finding transfer appropriate where material acts and omissions underlying the plaintiff's complaint occurred in transferee district).

As the misrepresentations occurred in California, this factor weighs in favor of transfer.

### d. As to the Availability of Process to Compel Attendance of Unwilling Witnesses

The Defendant states that this factor favors transfer because "the vast majority of witnesses reside in California, and California courts are far more easily situated to ensure that [they] will appear at trial." (Def.'s Mem. in Supp. of Mot. at 22).

"However, the defendant[] fail[s] to provide any evidence that any of these persons is unwilling to testify on the defendant['s] behalf in a trial in New York." *Schwartz v. Marriott Hotel Servs., Inc.*, 186 F. Supp. 2d 245, 250 (E.D.N.Y. 2002). "Thus, this factor militates against transfer." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 31 (E.D.N.Y. 2014)

### e. As to the Location of Relevant Documents and Other Sources of Proof

Neither party addresses this factor. Accordingly, this factor is neutral.

### f. As to the Relative Means of the Parties

"Where a disparity exists between the means of the parties . . . the court may consider the relative means of the parties in determining where a case should proceed." *Zaltz v. JDATE,* 952 F. Supp. 2d 439, 463 (E.D.N.Y. 2013) (citation and quotation marks omitted); *see also AIG Fin. Prods. Corp. v. Public Utility Dist. No. 1 of Snohomish Cnty., Wash.,* 675 F. Supp. 2d 354, 372 (S.D.N.Y. 2009) ("In determining whether the relative means of the parties weighs in favor of transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." (citation and internal quotation marks omitted)).

However, as here, "where proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered." *Eagle Outfitters, Inc. v. Tala Bros. Corp.,* 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006); *see also Quan v. Computer Scis. Corp.,* Nos. CV 06–3927(CBA)(JO), CV 06–5100(CBA)(JO), 2008 WL 89679, at *7 (E.D.N.Y. Jan. 7, 2008) ("Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in California, this factor adds nothing to my analysis."); *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) ("A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." (citation and internal quotation marks omitted)).

While the Plaintiff states that it is a small corporation and that this case should therefore stay in New York, the Plaintiff does not offer any information regarding its financial status.

Furthermore, "[w]hen both parties are corporations, . . . this factor is given little weight." *AEC One Stop*, 326 F. Supp. 2d at 531.

Therefore, this factor is neutral.

### g. As to the Relative Familiarity of the Forum with the Governing Law

The Plaintiff brings common law claims for fraud, breach of contract, and express warranty. The Plaintiff also alleges that the Defendant violated the California Consumer Legal Remedies Act.

"Overall, the forum's familiarity with governing law is a factor that is generally given little weight." *Freeplay Music*, 195 F. Supp. 3d at 620 (internal citation omitted); *see also ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550–51 (S.D.N.Y. 2008) (stating that this factor is "one of the least important factors in determining a motion to transfer" (internal citations and quotations marks omitted)).

The parties have not addressed which state law governs the common law claims. In any event, New York choice of law rules would govern the choice of law analysis. *See Van Dusen v. Barrack,* 376 U.S. 612, 621, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (choice of law analysis governed by transferor court's choice of law rules). Furthermore, as to the Plaintiff's California statutory claims, "federal courts are deemed capable of applying the substantive law of other states." *Horanzy v. Vemma Nutrition Co.*, 87 F. Supp. 3d 341, 350 (N.D.N.Y. 2015) (citing *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010)).

Therefore, this factor is also neutral.

### h. As to the Weight Accorded to the Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally given deference unless the plaintiff does not reside in the chosen forum, or there is no connection to the district. *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005)

Although as discussed above, many of the operative facts are found in California, there is a connection with New York in that the Plaintiff's injury occurred here. *See Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 109 (2d Cir.) ("[S]ince a tort action traditionally has not been viewed as complete until the plaintiff suffers injury or loss, the cause of action has generally been considered to arise at the place where this damage was sustained." (internal citations and quotation marks omitted)), *cert. denied sub nom. Sovereign Wealth Fund Samruk-Kazyna JSC v. Atl. Holdings, Inc.*, 137 S. Ct. 493, 196 L. Ed. 2d 403 (2016).

Therefore, this factor weighs against transfer. *See Freeplay Music*, 195 F. Supp. 3d at 620 ("Although many of the operative facts relate to Tennessee as outlined above, there is a connection with New York in that New York is where the alleged infringement was discovered by TuneSat and where the injury to Freeplay occurred. Therefore, given that courts typically give a plaintiff's choice of forum deference, this factor weighs against transfer."). In fact, this factor weighs heavily against transfer, as a plaintiff's choice of home forum is entitled to great deference where it is her home forum and there is a connection to the case. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) ("The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by  reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.").

### i. As to the Interests of Justice

The Court's consideration of whether transfer is in the interest of justice is "based on the totality of the circumstances," *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.*, 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003) (quoting *TM Claims, TM Claims Service v. KLM Royal Dutch Airlines,* 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001)), and "relates primarily to issues of judicial economy," *id.* (citing *Royal & Sunalliance v. British Airways,* 167 F. Supp. 2d 573, 578 (S.D.N.Y. 2001)).

While the Defendant has introduced evidence that tends to show that the NDCA typically resolves caser faster than courts in the EDNY, this Court agrees with Judge Chin's reasoning in *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (S.D.N.Y. 2009). In that case, the court said:

> Defendant has adduced evidence tending to show that, on average, the Northern District of California resolves cases faster than courts in this District. That may be so, but the time differential no doubt is due in part to the complex nature of many of the cases in this Court. I do not believe this case would be resolved appreciably faster in California. This factor therefore does not favor transfer.

*Id.* at 698. Therefore, this factor is neutral.

### 3. Conclusion

Therefore, only one of the factors weighs in favor of transfer, and four of the factors weigh against transfer. As transfer "should be ordered only if the balance of conveniences weighs strongly in favor of the change of forum," *Diamond Collection, LLC v. Underwraps Costume Corp.*, No. 17-CV-61 (ADS)(SIL), 2017 WL 3130323, at *6 (E.D.N.Y. July 21, 2017) (Spatt, J.), the Defendant's motion to transfer the case to the NDCA pursuant to Section 1404 is denied.

### III.  CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(2) or 12(b)(3) is denied without prejudice with leave to renew at the close of limited discovery.  The Court, in its discretion, orders jurisdictional discovery with regard to the Defendant's interstate and international commerce.  The Defendant's motion to transfer venue to the NDCA pursuant to Section 1404 is denied.

This matter is respectfully referred to United States Magistrate Judge Arlene R. Lindsay for limited jurisdictional discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York

April 17, 2018

*/s/ Arthur D. Spatt*

ARTHUR D. SPATT

United States District Judge